**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF DELAWARE**

IN RE LETTER OF REQUEST          )
FROM THE UKRAINE                 )
IN THE MATTER OF                 )    Misc. No. 06-
RICE TRADE COMPANY               )

**GOVERNMENT'S MEMORANDUM OF LAW**
**IN SUPPORT OF APPLICATION FOR ORDER**

This memorandum of law is submitted in support of the

Application for an Order pursuant to Title 28, United States

Code, Section 1782, in order to execute a  letter of request from

the Ukraine.  A copy of the translation is attached.

FACTUAL BACKGROUND:

This investigation is being conducted by the Ukrainian

authorities who are investigating a case of alleged official

negligence .

EVIDENCE SOUGHT:

The Ukrainian authorities seek information from a

company which resides in this District and the Delaware Secretary

of State's Office. Thus, the information the Ukrainians seek may

be obtainable here.  The authority for this Court to accede to

this request is contained in Title 28, United States Code,

Section 1782, which states in part:

> (a)  The district court of the district in which a person
> resides or is found may order him to give his testimony
> or statement or to produce a document or other thing for
> use in a proceeding in a foreign or international
> tribunal, including criminal investigations conducted
> before formal accusation.  The order may be made pursuant
> to a letter rogatory issued, or request made, by a

foreign or international tribunal or upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court. By virtue of his appointment, the person appointed has power to administer any necessary oath and take the testimony or statement. The order may prescribe the practice and procedure, which may be in whole or part the practice and procedure of the foreign country or the international tribunal, for taking the testimony or statement or producing the document or other thing. To the extent that the order does not prescribe otherwise, the testimony or statement shall be taken, and the document or other thing produced, in accordance with the Federal Rules of Civil Procedure.

The proper criteria for determining whether the court should exercise its discretion in favor of executing the request are outlined in *In Re Request for Judicial Assistance from the Seoul District Criminal Court*, 555 F.2d 720, 723 (9th Cir. 1977) (citation omitted):

> Under the statute the only restrictions explicitly stated are that the request be made by a foreign or international tribunal, and that the testimony or material requested be for use in a proceeding in such a tribunal.... [and] that the investigation in connection with which the request is made must relate to a judicial or quasi-judicial controversy.

Moreover, " (t)he judicial proceeding for which assistance is sought ... need not be pending at the time of the request for assistance; it suffices that the proceeding in the foreign tribunal and its contours be in reasonable contemplation when the request is made." *In Re Letter of Request from the Crown Prosecution Services of the United Kingdom*, 870 F.2d 686, 687 (D.C. Cir. 1989).

The letter of request in this case shows that the information sought is for use in such proceedings in the Ukraine and hence the request comes well within those circumstances contemplated by Congress in expanding the Federal Courts' authority to act in such matters. *In Re Letter of Request from the Crown Prosecution Service of the United Kingdom*, 870 F.2d 686, 689-91 (D.C. Cir. 1989); *In Re Letters Rogatory from the Tokyo District, Tokyo, Japan*, 539 F.2d 1216, 1219 (9th Cir. 1976). Therefore, I ask this Court to honor the request for assistance.

The reception of letters of request and the appointment of a Commissioner to execute them are matters customarily handled ex parte, and persons with objections to the request raise those objections by moving to quash any subpoenas issued by the Commissioner. *Id.*

**WHEREFORE**, the United States requests that the Court issue an Order, in the form, appended hereto, appointing a Commissioner in order to execute the request for assistance.

Respectfully submitted,

COLM F. CONNOLLY
United States Attorney

BY: _____

Richard G. Andrews
Assistant U.S. Attorney
Delaware Bar I.D. No.2199
1007 N. Orange Street
Wilmington, DE    19801
(302) 573-6277

Dated: 5|9|06

*State Emblem of Ukraine*

**Public Prosecution of Ukraine**

# GENERAL PROSECUTOR'S OFFICE OF UKRAINE

01011, Kyiv-11, Riznytska Str. 13/15                              fax (044) 290-26-03

*14,* 03.06  No 14/2-26468-06

**Department of Justice
of the United States of America**

To:  **Rex Young**
Suite 800
1301 New York Ave., N.W.
Washington, D.C. 20005

### Dear Mr. Young,

The General Prosecutor's Office of Ukraine expresses its highest consideration to the Department of Justice of the USA and in conformity with the Agreement between the United States of America and Ukraine *On Mutual Legal Assistance in Criminal Matters,* signed on 22.07.1998, applies with the following request.

The Transport Prosecutor's Office in Odessa region is carrying out proceedings in a criminal matter No 108/2003 initiated on the fact of negligence of the officers of the Illichivsk customs station.

The need of performance of proceedings in the territory of the USA has arisen in the course of investigation of this matter and for this reason I am sending the investigatory commission with a kind request to organize its execution and to forward the received materials at the address of the General Prosecutor's Office of Ukraine quoting our reference number.

The General Prosecutor's Office of Ukraine assures that the received materials will be used only in the process of investigation of the criminal matter and its consideration at court.

Enclosure:  on 17 pages.

**Sincerely,**
**Head of**
**International Law Department**                              **S.F. Kravchuk**

By: Nishchenko B.M.., tel.: 288-95-58

The seal of
the General Prosecutor's Office
of Ukraine

Translator of the General Prosecutor's Office of Ukraine                    R. Mykytenko

*Translation from Ukrainian into English.*

To competent authorities of the United States of America

International investigative commission about rendering of legal assistance
in investigation of criminal case No. 108/2003 brought
by the Department of security service of Ukraine in Odessa region
on the fact of official negligence on the basis of offence provided by the clause 367 part 1 of
Criminal Code of Ukraine.

### Dear Sirs!

Illichivsk transport Office of Public Prosecutor of Odessa region addresses to You with this request about rendering of legal assistance on the basis of contract concluded between Ukraine and the United States of America "About reciprocal legal assistance in criminal cases" as of 22.07.1998.

Illichivsk transport Office of Public Prosecutor of Odessa region carries out the investigation on criminal case No. 108/2003 brought according to the clause 367 part 1 of Criminal code of Ukraine on the fact of official negligence by the officials of customs post "Illichivsk" (Odessa region, Ukraine).

Clause 367 part 1 of Criminal code of Ukraine – official negligence, i.e. nonfulfilment or undue execution of duties by the official due to neglect attitude to them, that caused considerable damage to legal rights, freedom and interests of individuals, or state or public interests, or interest of individual legal persons. It is punished by a fine at the rate from fifty to one hundred fifty not taxable minimums of incomes of citizens or by disciplinary works for the term up to two years, or by limitation of liberty for the term up to three years with forfeiture of right to hold certain offices or to engage in certain activity for the term up to three years.

Case circumstances:

On 25.10.2005 the cargo with rice in 6015,6 tons came to Illichivsk sea fish port (Odessa region, Ukraine) on M/V "SANCRIS" from India (port Kandla) according to 12 bills of lading (KDL/SANCRIS/01 – KDL/SANCRIS/12). According to accompanying documents the consignors are the firms "Pec Limited (Hansalaya 15, Barakhamba road, New Delhi 110001 a/c.)" and "K.N. Resources Limited" (K.N. Building, Subhash road, Raipur (C.G.)), consignee is the firm "Rice Trade Company inc." (41 State Street, Suite 106, Albany 12207, NY/USA), receiver of the cargo is Joint-stock company "Pivdenmortrans" (Ukraine, city of Odessa, Lyustdorfska road, 140-A, OTB, apt.#2).

For that time the cargo in extent of 6015,6 tons was in 4 holds of M/V "SANCRIS". On the basis of application of owner of cargo, Joint-stock company "Pivdenmortrans", Kozachenko B.I., acting as Chief of sanitary-and-quarantine department of Central sanitary and epidemiologic station on the water transport, and Kiforenko G.Ya., assistant of the epidemiologist of the same station, took the examples of rice from these holds of M/V "SANCRIS". According to the results of hygienic assessment of the foodstuffs and food raw material No. 2052/2055, Central sanitary and epidemiologic station on the water transport determined that in selected examples of rice there are aflatoxin B1 in the quantity of 0,006-0,008 mg/kg whereas the norm is 0,005 mg/kg, excess of allowable norm is 40%.

Also according to the control investigations carried out by the Institute of ecological hygiene and toxicology named after L.I.Medved (city of Kyiv) and Central sanitary and epidemiologic station of the Ministry of Health Protection of Ukraine the increased contents of aflatoxin B1 0,0084 mk/kg and 0,011 mg/kg correspondingly was approved.

The abovementioned Central sanitary and epidemiologic station on the water transport made a conclusion that the above stated lot of rice is unsafe for health of population (protocol No. 01.3/1753 as of 22.11.2002). According to the decree of Central sanitary and epidemiologic station on the water transport about application of administrative-preventive

arrangements due to breach of sanitary legislation No. 55 as of 25.11.2002 the stated is forbidden to import, sale and consumption by the population. Joint-stock company 'Pivdenmortrans' (director Krypayev S.V.) was made responsible for execution of this decree. Copies of the decree were sent to the Head of customs post "Illichivsk" and to the Head of Illichivsk sea fish port with the purpose of execution control.

At the same time in accordance with the conclusion made by the State Sanitary and Epidemiological Expertise No.5.10/45060 dated December 16, 2002, the rise complies with the Sanitary Legislation of Ukraine and can be used with purpose. The results of the hygienic assessment (Protocol of the Institute of ecological hygiene and toxicology named after L.I.Medved 3/8-A-7590-4774C dated December 12, 2002) show that the contents of aflatoxin B1 in the presented samples complies with the standard as well, i.e. less than 0.005 mk/kilo. But the samples for the investigation had been taken by the Employees of the Customs post 'Illichivsk' and State Inspection dealing with the vegetable caratin in Odessa Region in the absence of the Officials representing the Central sanitary and epidemiologic station on the water transport, that is with the violation of the legislation of Ukraine (this is provided by the Article 8 of the Ukrainian Law 'On the Maintenance of the Sanitary and Epidemic Population Welfare' and is confirmed by means of the letter drawn up by the Director of the Joint-stock Company 'Pidenmortrans' Krypayev S.V. (No. January 17, 2003).

Not taking into consideration the conclusion of the Central sanitary and epidemiologic station on the water transport on the prohibition of the import of this rice lot (with the total quantity: 6,015.6 tons) to Ukraine on March 18, 2003 – April 15, 2003 was drawn up by the Officials of the Customs Post 'Illichivsk' and sent from the M/V 'SANCRIS' to the addresses of the enterprises of the Republic of Moldova and Belarus in the order 916 tons of the rice. Besides, in accordance with the Cargo and Customs Declarations No.50004/3/16444 and 50004/3/16445 on July 4-10, 2003 2 lots of the rice (500 tons each) were put into free circulation and use and sent to the address of the Limited Liability Company 'Agromax', the City of Zhytomyr, Ukraine. According the point 2.10 of the joint order of the State committee on security affairs of the State border of Ukraine, the State Customs Service of Ukraine and the Ministry of Transport of Ukraine No. 152/165/130 as of 05.03.2001 the control in the road blocks for the maritime joining is executed by the special commission, that is headed by the official of the sub-division of the near border control. According to the art. 3.5. of this order, the cargoes are passed through the state border by the official of the subOdivision ob the near border control after implementation of the types of control, foreseen by the legislation on the grounds of positive conclusions of the customs officials, and in case of necessity – and other controlling bodies. The duration of types of control according to the technology of working process of the road blocks is determined by the head of security body of the state border and customs, and in case of necessity – to other controlling bodies.

Having violated the demands of the order, not executing the respective control and registration of cargo, the officials of Customs post "Illichivsk" committed the crime, foreseen by the art. 367.1, part of the Criminal Code of Ukraine – the official negligence, i.e. non-fulfillment or improper fulfillment by the official of his official obligations because of unprincipled treatment to them, that caused substantial damage to the rights, freedoms and interests of separate citizens, protected by legislation, or the state or public interests, or interests of the separate legal persons.

During investigation it was also determined that the Joint-stock company "Pivdenmortrans" has concluded the foreign economic treaties with the firm "RICE TRADE COMPANY INK" which is situated at the address: 41 State Street, Suit 106, Aibany, NY, 12207. The petition from the representative of "RICE TRADE COMPANY INK" Chizh N.M. with the request to count the money, received from rice selling was delivered to Illichivsk Transport Prosecutor's Office of Odessa region. The copies of the power of attorney, apostil and notary certificate are annexed to the petition.

Information about companies, connected with: The joint-stock company "Pivdenmortrans", director Kripayev S.V., acting on the grounds of the statute, registered at the address: Ukraine, 65114, city of Odessa, Lustdorfska road 140-A, code ███████████ in Odessa Branch of JSCB "Premyerbank" ██████

With the purpose of comprehensive, full and objective investigation of this criminal case and settlement of question about responsibility of the guilty persons, who concern the commitment of the indicated crime, we have the honor to ask You on the grounds of the treaty between Ukraine and the United States of America "About mutual legal assistance in criminal cases" as of 22.07.1998 and pursuant to the legislation of the United States of America to provide the following **legal assistance**:

1) To determine in the competent bodies of the USA if there is a firm "RICE TRADE COMPANY INK", situated at the address: 41 State Street, Suit 106, Albany, NY, 12207 in the USA?
2) If the foreign economic contracts concerning purchase of long-coin rice of Indian production between the firms Joint-stock company "Pivdenmortrans" (Ukraine) and "RICE TRADE COMPANY INK" (USA) were concluded ?(copy is attached)
3) If the commission as of 06.09.2005 was given to Chizh N.M.?(copy is attached)
4) If the Secretary of State H.S. Windsor gives apostil as of 22.09.2005?? (copy is attached)
5) and notary public of the State of Delaware Marry L. Quinn gives the notary certification?

The information and the copies of documents received for execution of this commission should be certified by the seal of the institution of the commission`s executive and by his signature and to send at our address.

The Illichivsk Transport Prosecutor's Office ensures that the indicated criminal case doesn`t have politics as its object.

All received documents  and data will be used only with purpose of investigation of this case and its further consideration in the court.

Because of limited terms of investigation I ask You to send the answer in the nearest terms.

Thank you in advance for your cooperation in this case, and using this case, we certify you our great respect and readiness to provide the legal assistance in case of respective appeals.

Our address: 68000, Ukraine, Odessa region, city of Illichivsk, 20 A Parkova Str., Illichivsk Transport Prosecutor's Office of Odessa region
Tel: 8-04868-6-02-07.

Appendix: - copies of documents on _08_ pages;

With respect
Investigator of Illichivsk Transport Prosecutor's Office of Odessa region
Jurist of the 3rd class.

Kuzhko S.S.

*Translation from Ukrainian into English was done at the translation center "Orient" by the translator Silvestrova Yuliya..*

To competent authorities of the United States of America

International investigative commission about rendering of legal assistance
in investigation of criminal case No. 108/2003 brought
by the Department of security service of Ukraine in Odessa region
on the fact of official negligence on the basis of offence provided by the clause 367 part 1 of
Criminal Code of Ukraine.

*Dear Sirs!*

Illichivsk transport Office of Public Prosecutor of Odessa region addresses to You with this request about rendering of legal assistance on the basis of contract concluded between Ukraine and the United States of America "About reciprocal legal assistance in criminal cases" as of 22.07.1998.

Illichivsk transport Office of Public Prosecutor of Odessa region carries out the investigation on criminal case No. 108/2003 brought according to the clause 367 part 1 of Criminal code of Ukraine on the fact of official negligence by the officials of customs post "Illichivsk" (Odessa region, Ukraine).

Clause 367 part 1 of Criminal code of Ukraine - official negligence, i.e. nonfulfilment or undue execution of duties by the official due to neglect attitude to them, that caused considerable damage to legal rights, freedom and interests of individuals, or state or public interests, or interest of individual legal persons. It is punished by a fine at the rate from fifty to one hundred fifty not taxable minimums of incomes of citizens or by disciplinary works for the term up to two years, or by limitation of liberty for the term up to three years with forfeiture of right to hold certain offices or to engage in certain activity for the term up to three years.

Case circumstances:

On 25.10.2005 the cargo with rice in 6015,6 tons came to Illichivsk sea fish port (Odessa region, Ukraine) on M/V "SANCRIS" from India (port Kandla) according to 12 bills of lading (KDL/SANCRIS/01 – KDL/SANCRIS/12). According to accompanying documents the consignors are the firms "Pec Limited (Hansalaya 15, Barakhamba road, New Delhi 110001 a/c.) and "K.N. Resourses Limited" (K.N. Building, Subhash road, Raipur (C.G.)), consignee is the firm "Rice Trade Company inc." (41 State Street, Suite 106, Albany 12207, NY/USA), receiver of the cargo is Joint-stock company "Pivdenmortrans" (Ukraine, city of Odessa, Lyustdorfska road, 140-A, OTB, apt. #2).

For that time the cargo in extent of 6015,6 tons was in 4 holds of M/V "SANCRIS". On the basis of application of owner of cargo, Joint-stock company "Pivdenmortrans", Kozachenko B.I., acting as Chief of sanitary-and- quarantine department of Central sanitary and epidemiologic station on the water transport, and Kiforenko G.Ya., assistant of the epidemiologist of the same station, took the examples of rice from these holds of M/V "SANCRIS". According to the results of hygienic assessment of the foodstuffs and food raw material No. 2052/2055, Central sanitary and epidemiologic station on the water transport determined that in selected examples of rice there are aflatoxin B1 in the quantity of 0,006-0,008 mg/kg whereas the norm is 0,005 mg/kg, excess of allowable norm is 40%.

Also according to the control investigations carried out by the Institute of ecological hygiene and toxicology named after L.I.Medved (city of Kyiv) and central sanitary and epidemiologic station of the Ministry of Health Protection of Ukraine the increased contents of aflatoxin B1 0,0084 mk/kg and 0,011 mg/kg correspondingly was approved.

The abovementioned Central sanitary and epidemiologic station on the water transport made a conclusion that the above stated lot of rice is unsafe for health disposal (protocol No. 01.3/1753 as of 22.11.2002). According to the decree of Central sanitary and epidemiologic station on the water transport about application of administrative-preventive arrangements due to breach of sanitary legislation No. 55 as of 25.11.2002 the stated lot is forbidden to import, sale

and consumption by the population. Joint-stock company "Pivdenmortrans" (director Krypayev S.V.) was made responsible for execution of this decree. Copies of the decree were sent to the Head of customs post "Illichivsk" and to the Head of Illichivsk sea fish port with the purpose of execution control.

At the same time in accordance with the conclusion made by the State Sanitary and Epidemiological Expertise No.5.10/45060 dated December 16, 2002, the rise complies with the Sanitary Legislation of Ukraine and can be used with purpose. The results of the hygienic assessment (Protocol of the Institute of ecological hygiene and toxicology named after L.I.Medved 3/8-A-7590-4774€ dated December 12, 2002) show that the contents of aflatoxin B1 in the presented samples complies with the standard as well, i.e. less than 0.005 mk/kilo. But the samples for the investigation had been taken by the Employees of the Customs post 'Illichivsk' and State Inspection dealing with the vegetable caratin in Odessa Region in the absence of the Officials representing the Central sanitary and epidemiologic station on the water transport, that is with the violation of the legislation of Ukraine (this is provided by the Article 8 of the Ukrainian Law 'On the Maintenance of the Sanitary and Epidemic Population Welfare' and is confirmed by means of the letter drawn up by the Director of the Joint-stock Company 'Pidenmortrans' Krypayev S.V. (No. January 17, 2003).

Not taking into consideration the conclusion of the Central sanitary and epidemiologic station on the water transport on the prohibition of the import of this rice lot (with the total quantity: 6,015.6 tons) to Ukraine on March 18, 2003 – April 15, 2003 was drawn up by the Officials of the Customs Post 'Illichivsk'and sent from the M/V 'SANCRIS' to the addresses of the enterprises of the Republic of Moldova and Belarus in the order 916 tons of the rice. Besides, in accordance with the Cargo and Customs Declarations No.50004/3/16444 and 50004/3/16445 on July 4-10, 2003 2 lots of the rice (500 tons each) were put into free circulation and use and sent to the address of the Limited Liability Company 'Agromax', the City of Zhytomyr, Ukraine.

According to art. 3.2.10 of the joint order of the State committee on security affairs of the State border of Ukraine, the State Customs Service of Ukraine and the Ministry of Transport of Ukraine No. 152/165/130 as of 05.03.2001 the control in the road blocks for the maritime joining is executed by the special commission, that is headed by the official of the sub-division of the near border control. According to the art. 3.5. of this order, the cargoes are passed through the state border by the official of the sub0division ob the near border control after implementation of the types of control, foreseen by the legislation on the grounds of positive conclusions of the customs officials, and in case of necessity – and other controlling bodies. The duration of types of control according to the technology of working process of the road blocks is determined by the head of security body of the state border and customs, and in case of necessity – to other controlling bodies.

Having violated the demands of the order, not executing the respective control and registration of cargo, the officials of Customs post "Illichivsk" committed the crime, foreseen by the art. 367 1, part of the Criminal Code of Ukraine – the official negligence, i.e. non-fulfillment or improper fulfillment by the official of his official obligations because of unprincipled treatment to them, that caused substantial damage to the rights, freedoms and interests of separate citizens, protected by legislation, or the state or public interests, or interests of the separate legal persons.

During investigation it was also determined that the joint stock company "Pivdenmortrans" has concluded the foreign economic treaties with the firm "RICE TRADE COMPANY INK" which is situated at the address: 41 State Street, Suite 06, Albany NY, 12207.

The petition from the representative of "RICE TRADE COMPANY INK" Chizh N.M. with the request to count the money, received from rice selling, to unregistered Illichivsk Transport Prosecutor's Office of Odessa region. The copies of the power of attorney, apostil, and notary certificate are annexed to the petition.

Information about companies, connected with The joint-stock company "Pivdenmortrans", director Kripayev S.V., acting on the grounds the statute registered at the

address: Ukraine, 65114, city of Odessa, Lustdorfska road 140-A, code ▮▮▮▮ s/a ▮▮▮▮ in Odessa Branch of JSCB "Premyerbank" ▮▮▮▮

With the purpose of comprehensive, full and objective investigation of this criminal case and settlement of question about responsibility of the guilty persons, who concern the commitment of the indicated crime, we have the honor to ask You on the grounds of the treaty between Ukraine and the United States of America "About mutual legal assistance in criminal cases" as of 22.07.1998 and pursuant to the legislation of the United States of America to provide the following **legal assistance**:

1) To determine in the competent bodies of the USA if there is a firm "RICE TRADE COMPANY INK", situated at the address: 41 State Street, Suit 106, Aibany, NY, 12207 in the USA?

2) If the foreign economic contracts concerning purchase of long-coin rice of Indian production between the firms Joint-stock company "Pivdenmortrans" (Ukraine) and "RICE TRADE COMPANY INK" (USA) were concluded ?(copy is attached)

3) If the commission as of 06.09.2005 was given to Chizh N.M.?(copy is attached)

4) If the Secretary of State H.S. Windsor gives apostil as of 22.09.2005?? (copy is attached)

5) If the notary public of the State of Delaware Marry L. Quinn gives the notary certification?

The information and the copies of documents received for execution of this commission should be certified by the seal of the institution of the commission's executive and by his signature and to send at our address.

The Illichivsk Transport Prosecutor's Office ensures that the indicated criminal case doesn't have politics as its object.

All received documents and data will be used only with purpose of investigation of this case and its further consideration in the court.

Because of limited terms of investigation I ask You to send the answer in the nearest terms.

Thank you in advance for your cooperation in this case, and using this case, we certify you our great respect and readiness to provide the legal assistance in case of respective appeals.

Our address: 68000, Ukraine, Odessa region, city of Illichivsk, 20 A Parkova Str., Illichivsk Transport Prosecutor's Office of Odessa region
Tel: 8-04868-6-02-07.

Appendix: - copies of documents on _98_ pages;

With respect
Investigator of Illichivsk Transport Prosecutor's Office of Odessa region
Jurist of the 3rd class.

Kuzhko S.S.



## CONTRACT No. 68 – 01/TR

### ON TRANSPORT AND FORWARDING OF FOREIGN TRADE AND DOMESTIC CARGOES

City of Odessa                "15" August 2001

The Company "Rice Trade Company INC", hereinafter "the Customer" as represented by A. Nesterenko, acting on the basis of the Statutes, on the one part, and the Transport and Forwarding Joint-Stock Company "Yugmortrans", acting on the basis of License No. 444 issued by the Ministry of External Economic Relations and Trade of Ukraine, hereinafter "the Forwarder", as represented by Mr. S.V. Krypayev, Director, acting on the basis of the Statute of the Joint-Stock Company, on the other part, have agreed and signed this Contract on the following:

#### 1. Goal of the Contract

1.1. To organise, by the order of the Customer, a receipt, handling, storage and shipment of the foreign trade and domestic cargoes to their destinations and perform the relevant transport and forwarding service.

#### 2. Subject of the Contract

2.1. The Customer shall order on its behalf and at its expense, and the Forwarder shall accept the obligations to provide for a receipt, handling, storage, certification, shipment, carriage and delivery to their destination of the foreign trade and domestic cargoes, and transport and forwarding service and customs formalities.

2.2. In accordance with the goal of this Contract the Forwarder shall accept the obligation, as regards the cargoes shipped/received by the Customer or third parties acting on its behalf, to enter into the corresponding contractual relations with ports, port organizations, handling terminals, railroads, chartering agencies, railroad stations, insurance companies, customs bodies, borderline authorities, monitoring bodies and other enterprises and

## ДОГОВОР № 68 – 01/ТР

### О ТРАНСПОРТНОМ ЭКСПЕДИРОВАНИИ ВНЕШНЕТОРГОВЫХ И ВНУТРЕННИХ ГРУЗОВ

г.Одесса                "15" Августа 2001г.

Компания "Rice Trade Company INC", именуемое «Заказчик», в лице Директора А.Нестеренко, действующего на основании Устава, с одной стороны, и транспортно-экспедиторская компания АО«Югмортранс», действующая на основании Лицензии № 444 Министерства внешнеэкономических связей и торговли Украины именуемая «Экспедитор», в лице Директора г-на Крыпаева С. В., действующего на основании Устава АО, с другой стороны, договорились и подписали настоящий Договор о нижеследующем:

#### 1. Цель Договора.

1.1. Организация, по поручению Заказчика, приема, перевалки, хранения и отправки по назначению внешнеторговых и внутренних грузов, осуществление их транспортно-экспедиторского обслуживания.

#### 2. Предмет Договора

2.1. Заказчик от своего имени и за свой счет поручает, а Экспедитор принимает на себя обязательства по обеспечению приема, перевалки, хранению, сертификации, отправки, перевозки и доставки по назначению внешнеторговых и внутренних грузов, организацию их транспортно-экспедиторского обслуживания и таможенное оформление.

2.2. Экспедитор, согласно цели настоящего Договора, принимает на себя обязательство, по грузам отправляемым / принимаемым Заказчиком, либо по его поручению третьими лицами, вступать в соответствующие договорные отношения с портами, припортовыми организациями, перевалочными комплексами, железными дорогами, фрахтовыми агентами, железнодорожными станциями, страховыми компаниями, таможенными органами, приграничными службами, контрольными органами, иными предприятиями и организациями, связанными с перевалкой,

organizations engaged in handling, accumulation, storage, shipment, carriage and delivery of foreign trade, transit and domestic cargoes to their destinations.

2.3. The Parties shall agree the tariffs for carriage, the rates of transport and forwarding service of cargoes, forms of settlement of accounts depending on the carriage conditions, the basic delivery terms, liability for the shipment of cargoes, kind and transport characteristics of cargoes, type of rolling stock, carriage routes, etc. by way of signing the appropriate Appendix to this Contract that makes its integral part.

### 3. Duties of the Forwarder

3.1. Having received the order, the Forwarder shall select, develop and propose the most economical routes, tariffs and conditions of dispatch, carriage and delivery to their destinations of the cargoes provided by the Customer or by third parties acting on behalf of the Customer, provide the most favourable terms of passing the goods through ports, handling terminals, railroads of the carriage participants, railroad and border stations, and assist in case of contingencies.

3.2. Upon receipt of the confirmation from the Customer or directly from the Shipper that the goods are ready for shipment (carriage) the Forwarder shall accept the obligation to promptly commence its activity stipulated in his Contract, effect, at the expense of the funds advanced by the Customer, the payments to ports, handling terminals, railroads of the carriage participants, their chartering agents, railroad stations and other enterprises and organizations for the handling, dispatch, carriage and delivery to destination of the Customer's cargoes.

3.3. The Forwarder shall ensure a carriage of the foreign trade cargoes of the Customer or third parties acting on behalf of the Customer through (from, to) third countries and provide the individual codes for carrying cargoes

накоплением, хранением, отправкой, перевозкой и доставкой по назначению внешнеторговых, транзитных и внутренних грузов.

2.3. Согласование тарифов на перевозку и ставок транспортно - экспедиторского обслуживания грузов, формы взаиморасчетов, в зависимости от условий перевозки, базисных условий поставки, ответственности по отправке груза, вида и транспортных характеристик груза, типа подвижного состава, маршрута следования и т.п., производится Сторонами путем подписания соответствующего Приложения к настоящему Договору и являющегося его неотъемлемой частью.

### 3. Обязанности Экспедитора

3.1. Экспедитор, по заявке Заказчика, проводит работу по подбору, разработке и предложению наиболее экономичных маршрутов, тарифов и условий отправки, транспортировке и доставке по назначению грузов поставляемых Заказчиком, либо третьими лицами по его поручению, предоставлению наиболее благоприятных условий пропуска грузов через порты, перевалочные комплексы, железные дороги участниц перевозки, железнодорожные и пограничные станции, оказывает содействие в случае возникновения непредвиденных ситуаций.

3.2. По получению подтверждения от Заказчика, либо непосредственно от отправителя грузов, о готовности груза к отправке (перевозке), Экспедитор принимает на себя обязательство незамедлительно приступить к выполнению работ своей ответственности по настоящему Договору, произвести за счет авансовых средств Заказчика, платежи портам, перевалочным комплексам, железным дорогам участницам перевозки, их фрахтовым агентам, ж\д станциям, иным предприятиям и организациям за перевалку, отправку, транспортировку и доставку по назначению грузов Заказчика.

3.3. Экспедитор, транспортировку внешнеторговым грузов Заказчика, либо третьих лиц по поручению, через (из, в) третьи страны, предоставляет индивидуальные коды

In doing so, the two copies of the expenditure calculation sheet should indicate, separately for each Shipper (Consignee): station of shipment; station of destination; No. of transport vehicle; No. of waybill (railroad waybill according to the AICT form); and the weight of shipped cargo; with the rates attached.

The calculation sheets and the reports should be properly signed and sealed with the Forwarder's seal.

3.9. The Forwarder shall inform the Consignee on each carried unit of shipment dispatched to his address indicating: number of carried unit; number of waybill (road waybill); weight of cargo; kind of cargo and the date of shipment.

3.10. By the order of the Customer and in accordance with the agreed tariffs, the Forwarder shall inform the Customer and the third parties, if so requested by the Customer, on the passage of border stations by the cargoes and on the location of the carriage units on the route.

3.11. The Forwarder shall keep a routine record of shipment and receipt of the Customer's cargoes at their destination points.

3.12. By request of the transport and other organizations and by the order of the Customer, the Forwarder shall participate in preparation of various acts and documents connected with handling, dispatch, carriage and delivery of the Customer's cargoes to their destination.

3.13. The Forwarder shall ensure a safety of the Customer's cargoes on the basis of its contracts concluded with ports, handling terminals, Port organisations, carriers, freight agents, railroads and railroad stations, insurance companies, border services and other enterprises and organisations that take part in handling, shipping, carriage and delivery of the Customer's cargoes to their destinations.

In case of claims, the Forwarder shall provide for the issuance of the appropriate documents

настоящего Договора.

При этом в четко оформленной в двух экземплярах расчетной ведомости произведенных затрат должно быть указано раздельно по каждому грузоотправителю (грузополучателю): ст.отправления; ст.назначения; № транспортного средства; № транспортной накладной (ж\д накладной СМГС); вес отправленного груза с приложением расчетных ставок.

Расчетные ведомости и отчеты должны быть официально подписаны и заверены печатью Экспедитора.

3.9. По каждой из транспортных единиц отправки, Экспедитор информирует грузополучателя об отправленных в его адрес грузах с указанием: № транспортной единицы; № транспортной (ж\д) накладной на отправку; веса груза; вида груза и даты его отправки.

3.10. По поручению Заказчика и согласованным тарифам, Экспедитор информирует Заказчика и третьих лиц, по его поручению, о прохождении транспортными единицами перевозки погрничных переходов и о положении транспортных единиц на маршруте следования.

3.11. Экспедитор ведет оперативный учет отправок и поступления по назначению грузов Заказчика.

3.12. По требованию транспортных и иных организаций, Экспедитор, по поручению Заказчика, участвует в составлении различных актов и документов, связанных с перевалкой, отправкой, перевозкой и доставкой по назначению грузов Заказчика.

3.13. Экспедитор обеспечивает сохранность грузов Заказчика на основании своих договоров, с портами, перевалочными комплексами, припортовыми организациями, перевозчиками, фрахтовыми агентами, железными дорогами и железнодорожными станциями, страховыми компаниями, пригранічными службами и ыными предприятиями и организациями участвующими в перевалке, накоплении отправке, перевозке и доставке по назначению грузов Заказчика.

across these countries.

3.4. In accordance with the volume of works the Forwarder is responsible for in connection with the dispatch, carriage and delivery of the cargo of the Customer or third parties who act by the order of the Customer or by his guarantee of covering the carriage expenses, the Forwarder shall prepare or inform the Customer (Shipper) on the procedure of preparing the waybills, including AICT railroad waybills (Agreement on International Railroad Cargo Transportation) for each dispatch of foreign trade cargo and the lists of the obligatory shipping documents for the cargo to be attached in compliance with the Transport Law of the countries that participate in the carriage.

3.5. The Forwarder shall provide the Customer with the copies of its correspondence with third parties whose cargoes are dispatched, carried and delivered to their destinations by the Forwarder in accordance with the order or a guarantee of the Customer.

The Parties to this Contract shall agree the costs of such works.

3.6. The Forwarder shall provide for the required shipping documents within his responsibility in compliance the Transport Law of the countries-participants of the carriage and the terms of the Customer's contracts regarding the cargoes dispatched by him in accordance with the Customer's order so as to ensure free dispatch, carriage and delivery of these cargoes to their destination.

3.7. The Forwarder shall ensure that the Customer's cargoes are dispatched in proper packing, preventing the goods from spoilage and damage throughout the entire carriage taking into account the carriage conditions and the provisions of the Customer's contracts.

3.8. As the cargoes are shipped to their destination, the Forwarder shall promptly report to the Customer on the use of advanced funds making calculations on the basis of the relevant Appendices to this Contract.

перевозки грузов по этим странам.

3.4. В соответствии с объемом работ своей ответственности по отправке, транспортировке и доставке по назначению грузов Заказчика, либо третьих лиц, отправка грузов которыми производится по поручению Заказчика либо по его гарантии оплаты затрат на перевозку, Экспедитор оформляет, либо сообщает Заказчику (отправителю) порядок заполнения транспортных накладных, в т.ч железнодорожных накладных СМГС (Соглашение о международном железнодорожном грузовом сообщении) по каждой из отправок внешнеторговых грузов, перечень обязательных сопроводительных документов на груз прилагаемых согласно транспортного законодательства стран участниц перевозки.

3.5. Экспедитор предоставляет Заказчику копии документов своей переписки с третьими лицами, отправка, транспортировка и доставка по назначению грузов которых производится Экспедитором по поручению или гарантии Заказчика.

Согласование стоимости данных работ производится Сторонами настоящего Договора.

3.6. Экспедитор обеспечивает наличие на отправляемые им, по поручению Заказчика, грузы необходимых сопроводительных документов своей ответственности требуемых по транспортному законодательству стран - участниц перевозки и условиям договоров Заказчика, в целях беспрепятственной отправки, транспортировке и доставке по назначению данных грузов.

3.7. Экспедитор обеспечивает отправку грузов Заказчика в надлежащей упаковке, предохраняющей товар от порчи и повреждений на всем пути следования с учетом условий перевозки и согласно договоров Заказчика.

3.8. По мере отправки грузов по назначению, Экспедитор незамедлительно предоставляет Заказчику отчет по использованию в связи с этим авансовых средств Заказчика с расчетом согласно соответствующих Приложений

4.5. If the Customer or a third party acting by his order independently transfers the cargo to the first carrier, the Customer shall undertake to provide the Forwarder, not later than on the next working day after the cargo is transferred to the first carrier, with the documents and information required for the Forwarder for the fulfillment of the works he is responsible for in connection with this particular carriage. The Parties in addition depending on the kind of carriage, nature of the cargo, the volume of works and the scope of the Forwarder's responsibility shall agree the list of documents.

4.6. If the Customer or a third party acting by his order independently transfers the cargo to the first carrier, the Customer shall be responsible for correct preparation of the shipping documents in accordance with the Forwarder's instructions.

If the shipping documents are prepared not in accordance with the Forwarder's instructions by the fault of the Customer which incurred additional expenses of the Forwarder, the Customer shall pay the Forwarder, by a separate invoice, the amount equivalent to USD 200.00 for each such rail car/shipment.

4.7. The Customer shall independently insure the cargoes against the risks associated with handling, storage and carriage or order the Forwarder on insure the cargoes on the Customer's behalf out of the amount advanced to the forwarder. In doing so, the list of risks and the level of insurance rates shall have to be agreed by the Parties and attached to this Contract.

### 5. Payment Terms

5.1. The Customer shall pay the Forwarder for the works in accordance with this Contract by advancing the latter's expenses in connection with the receipt, handling, storage, carriage, delivery to their destination and transport and forwarding service of the cargoes of the Customer or the third parties nominated by the Customer in accordance with the rates indicated in the appropriate Appendix to this Contract.

4.5. В случае, если Заказчик, либо третье лицо по его поручению, самостоятельно передает груз первому перевозчику, Заказчик обеспечивает предоставление Экспедитору не позже следующего рабочего дня от даты передачи груза первому перевозчику, документов и информации необходимых для выполнения Экспедитором объема работ своей ответственности по данной перевозке. Перечень документов согласовывается Сторонами дополнительно в зависимости от вида перевозки, характера груза, объема работ ответственности Экспедитора.

4.6. В случае, если Заказчик, либо третье лицо по его поручению, самостоятельно передает груз первому перевозчику, Заказчик несет ответственность за правильность оформления транспортных документов согласно инструкций Экспедитора.

При заполнении транспортных документов с нарушением инструкций Экспедитора по вине Заказчика повлекшими за собой дополнительные расходы со стороны Экспедитора, Заказчик оплачивает Экспедитору сумму эквивалентную 200,0 дол.США за каждый вагон\отправку, в отношении которых допущено нарушение по отдельному счету.

4.7. Заказчик самостоятельно производит страхование грузов от рисков при перевалке, хранении и перевозке или поручает от своего имени застраховать грузы Экспедитору за счет авансовых средств Заказчика; при этом перечень рисков и уровень страховых ставок согласовывается Сторонами и прилагается к настоящему Договору.

### 5. Условия Оплаты

5.1. Оплата работ по настоящему Договору производится путем авансирования Заказчиком затрат Экспедитора по выполнению работ ответственности последнего связанных с осуществлением приема, перевалки, хранению, перевозки, доставки по назначению и транспортно-экспедиторскому обслуживанию грузов Заказчика, либо третьих лиц по его представлению, согласно ставок указанных в соответствующем Приложении к настоящему Договору.

o bring claims and actions in compliance with the effective legislation of Ukraine.

The responsibility for the safety of cargo during its carriage through third countries shall be regulated by the Consignee in compliance with the Rules of cargo Carriage, including the carriage by rail, in compliance with the AICT.

3.14. The Forwarder shall inform the Customer in advance on the changes in transport legislation and the tariffs indicating the effective dates as long as it concerns the performance of works in accordance with this Contract.

### 4. Duties of the Customer

4.1. If necessary and depending on the kind and volume of the works, the Customer shall issue a power of attorney to the Forwarder that entitles the latter to conclude appropriate contracts with the enterprises and organizations for handling, storage, shipment, carriage and delivery of the Customer's cargoes to their destination as well as for transport and forwarding services and organization of the performance of customs formalities.

4.2. The Customer shall see that the foreign trade cargoes are provided with the required shipping documents in accordance with the Transport law of he countries-participants of carriage and the foreign trade contracts of the Customer with a view of prompt shipment, carriage and delivery of these cargoes to their destination.

4.3. In accordance with its foreign trade contracts the Customer shall provide for shipment of the cargo properly packed so as to preclude spoilage and damage throughout all route taking into consideration the carriage conditions.

4.4. The Customer shall inform the Forwarder in advance on the volumes and schedules of planned deliveries so as to make it possible for the Forwarder to present proposals on the most economical terms and routes of carriage.

В случае наличия претензий, Экспедитор обеспечивает оформление необходимых документов для предъявления претензий и исков в соответствии с действующим законодательством Украины.

Ответственность за сохранность груза при его перевозке через третьи страны регулируется грузополучателем в соответствии с правилами перевозки грузов, в т.ч. при железнодорожных перевозках в соответствии с СМГС.

3.14. Экспедитор заблаговременно информирует Заказчика о изменении транспортного законодательства и тарифов в части касающейся выполнения работ по настоящему Договору с указанием срока ввода их в действие.

### 4. Обязанности Заказчика

4.1. Заказчик, при необходимости, в зависимости от уровня и объема работ ответственности Экспедитора, выдает последнему доверенность на право заключения соответствующих договоров с предприятиями и организациями на перевалку, хранение, контроль, отправку, перевозку и доставку по назначению, грузов Заказчика, а также на право совершения по данным грузам транспортно-экспедиторского обслуживания и таможенного оформления.

4.2. Заказчик обеспечивает наличие на внешнеторговые грузы необходимых сопроводительных документов своей ответственности, требуемых по транспортному законодательству стран - участниц перевозки и внешнеторговым контрактам Заказчика, в целях беспрепятственной отправки, транспортировки и доставке по назначению данных грузов.

4.3. Заказчик обеспечивает отправку грузов согласно своих внешнеторговых контрактов в надлежащей упаковке, предохраняющей товар от порчи и повреждений на всем пути следования с учетом условий перевозки.

4.4. Заказчик заблаговременно направляет Экспедитору объемы и графики планируемых поставок грузов с целью предоставления Экспедитору возможности подготовки предложений по наиболее экономически целесообразным условиям и маршрутам перевозки.

In doing so, the period of fulfillment of the obligations by the Parties shall be prolonged in proportion to the time during which such circumstances acted.

8.2. The Party for which it became impossible to fulfill its obligations in accordance with this Contract shall undertake to inform the other Party immediately (but not later than in three days after the advent of termination of such circumstances) on the advent of termination of such circumstances.

### 9. Validity of the Contract and Other Provisions

9.1. This Contract shall come into force as of the date of its signing by the Parties, shall be valid until 2004 and be considered prolonged for the next calendar year if the Parties do not object.

9.2. All additions to this Contract shall make its integral parts and prevail over its provisions and the provisions of the earlier concluded additions (or cancel them), and shall become valid if they are made in writing, have been registered and bear the date of adoption, the signatures of the duly authorized representatives of the Parties and are certified with seals.

9.3. Neither of the Parties may terminate the Contract unilaterally if it did not fulfill all its obligations to the other Party.

9.4. The delivery terms stipulated in this Contract shall be interpreted in accordance with "INCOTERMS 2000".

9.5. The Contract, its contents as well as all additions to it shall be confidential and may not be disclosed or used by the Parties for any unauthorized purposes.

9.6. The Contract and the additions to it that have been sent by fax shall have the legal force if the original later confirms them.

9.8. Third parties shall not be entitled to demand that the obligations of this Contract are

органами.
При этом срок выполнения обязательств Сторонами отодвигается соразмерно времени, в течении которого действовали такие обстоятельства.

8.2. Сторона, для которой создалась невозможность исполнения обязательств по настоящему Договору, должна немедленно, (но не позднее трех дней после наступления или прекращения их действия) известить другую Сторону о наступлении или прекращении таких обстоятельств.

### 9. Срок действия Договора и прочие условия

9.1. Настоящий Договор вступает в силу с даты его подписания Сторонами, действует до 2004 года и считается пролонгированным на следующий календарный год при отсутствии возражения Сторон.

9.2. Все дополнения к настоящему Договору, являются его неотъемлемой частью, имеют преимущественную силу перед его положениями и перед положениями ранее заключенных дополнений (или отменяют их), и вступают в действие, если совершены в письменном виде, имеют порядковый номер, дату принятия и подписи полномочных представителей Сторон, заверенные печатями.

9.3. Ни одна из Сторон не может в одностороннем порядке прекратить действие настоящего Договора, если за ней остались перед другой Стороной невыполненные обязательства.

9.4. При толковании транспортных условий поставки грузов по настоящему Договору имеют силу Правила "ИНКОТЕРМС" в редакции 2000г.

9.5. Договор, его содержание, а также все дополнения к нему являются конфиденциальными документами и не подлежат разглашению или использованию Сторонами в каких бы то ни было не разрешенных целях.

9.6. Договор и дополнения к нему, переданные по факсу имеют юридическую силу при последующем подтверждении оригиналом.

9.7. Третьи лица не имеют права требовать исполнения обязательств по условиям

5.2. The settlement of accounts between the Parties to this Contract shall be effected in US dollars.

5.3. The payment in accordance with this Contract shall be effected in US dollars.

5.4. The Parties shall prepare an intermediate balance of accounts on a monthly basis.

### 6. Disputes and Procedure of Their Settlement

6.1. The disputes and differences between the Parties that arise out of this Contract shall be settled amicably in the course of negotiations.

If the settlement may not be reached, the dispute shall be transferred to the Arbitration Court at the place of the defendant.

### 7. Liability of the Parties

7.1. The Parties shall be materially liable for a non-fulfilment or improper fulfillment of their obligations in accordance with this Contract.

7.2. The Party that invited a third party to perform its obligations in accordance with this Contract shall be liable to the other Party for the fulfillment of the obligations by the said third party as if it were the first Party's own actions.

7.3. The Party that failed to fulfill its obligations in accordance with this Contract shall undertake to immediately eliminate such breaches and inform the other Party accordingly.

### 8. Force-Majeure

8.1. The Parties shall be free from the liability for a full or partial non-fulfillment of their obligations in accordance with this Contract if such non-fulfillment took place as a consequence of the force-majeure circumstances (fire, flood, earthquake, other natural calamities, war and military activity, blockade, strike, wreckage and acts of governments) that were beyond control of the Parties, precluded the Parties from a loss-free fulfillment of their obligations and directly influenced the possibility to fulfill this Contract, could not be removed by reasonable actions of the Parties and was duly confirmed by competent authorities.

5.2. Валютой для проведения взаиморасчетов между Сторонами настоящего Договора является доллар США.

5.3. Валютой платежа по настоящему Договору является доллар США.

5.4. Стороны ежемесячно составляют промежуточный баланс взаиморасчетов.

### 6. Порядок разрешения разногласий

6.1. Споры и разногласия, возникшие между Сторонами в ходе исполнения настоящего Договора, разрешаются дружественным путем в ходе переговоров.
В случае недостижения согласия, спор подлежит рассмотрению в Арбитражном суде по месту нахождения ответчика.

### 7. Ответственность Сторон

7.1. Стороны несут имущественную ответственность за неисполнение или ненадлежащее исполнение своих обязательств по настоящему Договору.

7.2. Сторона, которая привлекла третье лицо к исполнению своих обязательств по данному Договору, несёт перед другой Стороной ответственность за исполнение обязательств третьим лицом как за собственные действия.

7.3. Сторона нарушившая свои обязательства по настоящему Договору должна незамедлительно устранить эти нарушения и информировать об этом другую Сторону.

### 8. Условия исключающие ответственность

8.1. Стороны освобождаются от ответственности полного или частичного исполнения обязательств по настоящему Договору, если неисполнение обязательств явилось следствием действия силы обстоятельств непреодолимой силы (пожар, наводнение, землетрясение, другие стихийные бедствия, война и военные действия, блокада, забастовка, крушение, действия правительств), находящейся вне контроля Сторон, не позволяющей экономически безубыточно выполнить Сторонами свои обязательства и непосредственно повлиявшей на возможность исполнения настоящего Договора, действие которой не могло быть устранено разумными действиями Сторон и которая подтверждена компетентными

7

performed.

9.8. The relations between the parties that are not envisaged by this Contract shall be regulated by the effective legislation of Ukraine.

9.9. This Contract shall replace any agreement on this subject that has been earlier concluded in writing or verbally.

9.10. The Contract is done on 9 pages in two copies (one copy for each Party), both copies having the same legal force.

### 10. Legal Addresses, Bank Requisites and Signatures of the Parties

The CUSTOMER
«ЗАКАЗЧИК»

The FORVARDER
«ЭКСПЕДИТОР»
Tel./fax: (0482) 450498; Tel.: (048) 7156513
E-mail: yugmortrans@farlep.net

настоящего Договора.

9.8. Взаимоотношения Сторон, не предусмотренные настоящим Договором, регулируются действующим законодательством Украины.

9.9. Настоящий Договор заменяет любое соглашение по данному предмету, заключенное ранее в устной или письменной форме.

9.10. Договор составлен на 9 страницах в двух экземпляраx (по экземпляру для каждой из Сторон), имеющих одинаковую юридическую силу.

### 10. Юридические адреса, банковские реквизиты и подписи Сторон

Rice Trade Company INC, 41 State Str. Suite 103, Albany, NY 12207, USA.
A/c    Balkan Investment Bank, Republika Srpska, Bosnia - Herzegovia.

140-A, Lustdorfskaya dor., Odessa, 65114, Ukraine

USD acc.    with Odessa Branch of CB "Premierbank", Odessa, MFO    OKPO

On behalf of the Customer
От имени Заказчика



On behalf of the Forvarder
От имени Экспедитора



9

# GENERAL POWER OF ATTORNEY

THIS POWER OF ATTORNEY is made this Sixth day of September 2005.

KNOW ALL MEN PRESENT that we:

## RICE TRADE COMPANY INC.

### 41 State Street, Suite 106, Albany, NY 12207, USA.

ACTING by Resolution of the Director this Sixth day of September 2005 and in accordance with our Certificate of incorporation and By-laws (hereinafter called "the Company") hereby appoint:

### NATALIYA CHYZH

Of Apt. 6, 116 Bolshaya Berdichevskaya St., Zhitomir, Republic of Ukraine.

Date of birth:

Holder of the passport No. _____ issued by Krolevskiy Board of Passports of the District of Zhitomir of the Republic of Ukraine, issued on 28th October 1998.

The true and lawful Attorney in fact of the Company (hereinafter called "the Attorney") for and in the name of and on behalf of the Company to do or to execute all or any of the facts and things hereinafter mentioned that is to say:

1. To transact manage carry on and do all and every business matter and things requisite and necessary or in any manner connected with or having reference to the business and affairs of the Company worldwide, including the Republic of Ukraine and for such purposes to conduct all correspondence appertaining to such business and affairs.

2. To represent the Company at any judicial authorities of the Republic of Ukraine, including Prosecutor's offices of the Republic of Ukraine, having all the rights stipulated by laws of the country for an action.

3. To deal with the property of the Company, and namely, to receive the property of the Company from third party, as well as transfer the same on behalf of the Company to third parties.

4. To adjust settle compromise or submit to arbitration any account or debt owing to the Company or claimed by the Company or any disputes concerning any such accounts debts claim or demands which may hereafter arise between the Company and any person or persons.

5. To commence prosecute enforce defend answer or oppose all sanctions and other legal proceedings and demands touching any of the matters aforesaid or any other matters in which the Company is or may hereafter be interested or concerned and also if thought fit to compromise refer to arbitration abandon submit to judgment or be non suited in any such action or proceedings as aforesaid.

6. For the better and more effectual executing the powers or authorities aforesaid or any of them to retain and employ such advocates attorneys or lawyers as our Attorney shall think fit to act or represent the Company wherever it may be necessary in the view of our Attorney so to do.

7. The Attorney is at liberty to appoint an agent or agents by Power of Attorney as necessary, to do all acts on behalf of the Attorney which the Attorney is authorized to perform on behalf of the Company under this Power of Attorney.

AND IT IS HEREBY AGREED THAT:

(1) This Power of Attorney shall remain in force within 6th day of September 2006 or until notice of the Company having revoked the same shall have been received by the said Attorney or by the Company Secretary to whom all inquiries regarding its validity should be addressed whichever is the earliest.

IN WITNESS whereof the seal of the Company has been hereunto affixed this Sixth day of September 2005.

THE COMMON SEAL OF: **RICE TRADE COMPANY INC.**

was hereunto affixed in the presence of :



## NOTARIAL CERTIFICATION

STATE OF DELAWARE             :

                             :    ss:

COUNTY OF NEW CASTLE          :

I, Mary L. Quinn, a Notary Public for the state and county aforesaid, do hereby declare that the attached document is a true and correct original copy of the Power of Attorney for **RICE TRADE COMPANY INC.**, a New York corporation, to the best of my knowledge, information and belief.

Given under my hand this twenty-first day of September,

Mary L. Quinn
Mary L. Quinn
Notary Public



257

# Apostille

### (Convention de La Haye du 5 Octobre 1961)

1. Country: *United States of America*

   *This public document:*
2. *has been signed by Mary L. Quinn*

3. *acting in the capacity of Notary Public of the State of Delaware*

4. *bears the seal/stamp of Mary L. Quinn, Notary Public, Delaware*

## Certified

5. *at Dover, Delaware*

6. *the twenty-second day of September, A.D. 2005*

7. *by Secretary of State, Delaware Department of State*

8. *No. 0263926*

9. *Seal/Stamp:*                                    10.  *Signature:*



Secretary of State





## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

IN RE LETTER OF REQUEST          )
FROM THE UKRAINE                 )
IN THE MATTER OF                 )          Misc No. 06-
RICE TRADE COMPANY               )
                          ORDER

      Upon application of the United States of America; and upon examination of a letter of request from the Ukraine whose authorities are seeking certain testimony and information from individuals which may be found in this District, for use in a judicial proceeding in the Ukraine and the Court being fully informed in the premises, it is hereby

      **ORDERED**, pursuant to Title 28, United States Code, Section 1782, that Richard G. Andrews, Assistant United States Attorney, hereby is appointed as Commissioner of this Court and is hereby directed to execute the letter of request from Ukrainian authorities as follows:

      1. to take such steps as are necessary, including issuance of commissioner's subpoenas to be served on persons within the jurisdiction of this Court, to collect the evidence requested;

      2. provide notice with respect to the collection of evidence to those persons identified in the requests as parties to whom notice should be given (and no notice to any other party

shall be required);

      3. adopt procedures to collect the evidence requested consistent with its use as evidence in a proceeding before a Court in the Ukraine, which procedures may be specified in the request or provided by the Ukrainian authorities;

      4. seek such further orders of this Court as may be necessary to execute this request; and

      5. certify and submit the evidence collected to the Office of International Affairs, Criminal Division, United States Department of Justice, or as otherwise directed by that office for transmission to the Ukrainian authorities.

      IT IS FURTHER ORDERED that, in collecting the evidence requested, the Commissioner may be accompanied by persons whose presence or participation is authorized by the Commissioner.

Dated: This _____ day of _____, 2006.

_____
United States District Court Judge

2